IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Florists' Mutual Insurance Company
*as subrogee of Mastronardi*
*Produce USA, Inc.*,

     Plaintiff,

     -vs-

Mountain High Greenhouse Construction,
LLC, et al.,
     Defendants.

Case No. 3:25 CV 592

ORDER GRANTING
<u>MOTION TO DISMISS</u>

JUDGE JACK ZOUHARY

### INTRODUCTION

In March 2023, a windstorm brought down a 19-acre greenhouse in Wapakoneta, Ohio, and blew this case into federal court.  After the collapse, Plaintiff Florists' Mutual Insurance Company ("Florists") picked up the tab for the damage.  Florists paid Mastronardi Produce USA Inc. ("Mastronardi") for its lost crops and other personal property located inside the greenhouse.  Florists now steps into Mastronardi's shoes and seeks recovery from Defendants Mountain High Greenhouse Construction, LLC, and Mountain High B.V. (collectively "Mountain High") for their allegedly poor construction.

Florists asserts seven counts: (1) negligence in specialized construction and erection; (2) negligent failure to identify, report, halt, warn, or seek clarification about structural nonconformities; (3) negligent undertaking; (4) negligence causing physical damage to other property; (5) res ipsa loquitur; (6) negligent misrepresentation; and (7) breach of express warranty or express assurance (Doc. 25 at 22–25 at 21–44).  Mountain High moves to dismiss the action with prejudice under Federal Civil Rule 12(b)(6) (Doc. 26-1).  The matter is fully briefed (Docs. 26-1, 27, 28).

**BACKGROUND**

In 2016, Golden Fresh Farms retained design-build company Thermo Energy Systems, Inc. ("Thermo") to build a greenhouse (Doc. 25 at 7–8).  Thermo retained G.S. Engineering Consultants, Inc. ("G.S. Engineering") to prepare the design drawings, which called for square steel "weld plates" measuring about six inches by six inches to join lower and upper column sections supporting the roof (*id.* at 8–10).  Florists now alleges Thermo cut corners, literally, by fabricating weld plates smaller than specified, about four inches by four inches, with the corners clipped off (*id.*).

Here's where Mountain High comes in.  Thermo contracted with Mountain High to erect the greenhouse (*id.* at 11).  Florists alleges Mountain High was not merely a passive labor provider. Rather, Mountain High held itself out as a specialized greenhouse construction firm that "should have known that critical load-bearing components were materially nonconforming or unsafe" (*id.* at 26).

Years later, the windstorm struck the greenhouse and it collapsed, damaging crops, inventory, equipment, and supplies (*id.* at 19–21).  Florists alleges the failure points occurred near the weld joints between the upper and lower columns, and that the nonconforming weld plates caused or contributed to the collapse (*id.*).  Florists paid Mastronardi, who had acquired the greenhouse from Golden Fresh Farms before the storm, $1.2 million in insurance claims and then sued to recover that payment (*id.* at 21).

Florists began litigation in June 2024 when it sued Thermo, but dismissed that case a year later after discovering Thermo had ceased doing business and had no liability insurance (*see* Case No. 24 CV 983).  Florists filed this case in March 2025.  After nearly a year spent attempting to serve the appropriate entities, Florists perfected service in February 2026, and Mountain High answered the Complaint (Doc. 20).  When Mountain High questioned what duty was breached to Mastronardi, a subsequent purchaser of the greenhouse, Florists filed an amended Complaint, adding allegations

2

attempting to address the specific duty breached (Doc. 25).  But the avalanche of counts failed to cure the basic defect -- Mastronardi was a later purchaser with no relationship to Mountain High.

## LAW

A Rule 12(b)(6) motion tests whether the complaint states a claim on which relief can be granted.  To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This Court accepts well-pled factual allegations as true and draws reasonable inferences in the plaintiff's favor.  But legal conclusions, labels, or formulaic recitations are not enough.  *Id.*  And, as a subrogee, Florists "stands in no higher position and can have no greater right than its insured."  *Am. Ins. Grp. v. McCowin*, 7 Ohio App. 2d 62, 65 (1966).  Florists therefore has only those claims Mastronardi itself could have asserted.

## DISCUSSION

At this stage, this Court accepts Florists' allegations that the weld plates were bad, Mountain High is responsible, and the greenhouse later collapsed as a result.  The question is whether Mastronardi, a later purchaser and operator of the greenhouse, can bring a claim against Mountain High -- a subcontractor that did not sell the property to Mastronardi, did not contract with Mastronardi, and did not communicate with or provide any warranty to Mastronardi.  The answer is no.

Florists tries to skirt this problem by characterizing Mountain High's construction obligations as independent tort duties, describing the damaged crops and personal property as "other property," invoking the evidentiary tool of res ipsa loquitur (which is not a tort claim), and portraying public statements and marketing as misrepresentations or express warranties.  None of these efforts save the amended Complaint.

**Duty & Privity**

Counts 1 through 4 allege various theories of negligence -- (1) negligent specialized construction and erection, (2) negligent failure to identify, report, halt, warn, or seek clarification about the weld plates, (3) negligent undertaking, and (4) negligence causing physical damage to property other than the greenhouse. Negligence requires a duty. *Snay v. Burr*, 167 Ohio St. 3d 123, 126 (2021). Duty is the relationship between plaintiff and defendant that gives rise to an obligation to exercise due care toward the plaintiff. *Id.* Foreseeability alone is not always enough. *Est. of Morgan v. Fairfield Fam. Counseling Ctr.*, 77 Ohio St. 3d 284, 293 (1997) ("[F]oreseeability alone is not always sufficient to establish the existence of a duty").

Mountain High was retained by Thermo, not Mastronardi, to erect the greenhouse (Doc. 25 at 11). Thermo retained G.S. Engineering to prepare the design documents and drawings and fabricated the structural components, including the smaller weld plates (*id.* at 8–9). Mountain High then erected the greenhouse (*id.* at 11). And Golden Fresh later sold the greenhouse to Mastronardi. These allegations do not establish any contract, sale, communication, warranty, reliance, or other legally meaningful relationship between Mountain High and Mastronardi.

Florists is correct that Ohio law recognizes a limited duty in the builder-vendor line of cases. In *Mitchem v. Johnson*, the Ohio Supreme Court held that a builder-vendor owes a duty to construct a real-property structure in a workmanlike manner and to use care commensurate with the risk involved. 7 Ohio St. 2d 66, 66 (1966). Likewise, *Velotta v. Leo Petronzio Landscaping, Inc.* held that a buyer can sue a builder-seller of a completed residence for negligently failing to construct in a workmanlike manner using ordinary care. 69 Ohio St. 2d 376, 377–79 (1982). And *McMillan v. Brune-Harpenau-Torbeck Builders, Inc.* extended that rule to subsequent buyers, holding that privity is not required in a negligence action by a real-property buyer against the *builder-seller*. 8 Ohio St. 3d 3, 4 (1983). *See also Jones v. Centex Homes*, 132 Ohio St. 3d 1, 4–5 (2012) (reaffirming that the

4

workmanlike-construction duty of a home builder could not be waived by the buyer).  But those cases don't control here.  Those cases involve builder-sellers whose role in the transaction supplied the legally significant relationship.  Mountain High was *not* a builder-seller; it was a subcontractor.  And no allegation, despite Florists' mountain of counts, connects Mastronardi to Mountain High.

Ohio courts make clear -- many times -- that when a tort claim is based on a duty arising from contractual relations, plaintiff generally must be a party or privy to the contract.  *See Wood v. MAK Inv. Props., LLC*, 2024-Ohio-4485, ¶ 20 (Ohio Ct. App. 2024) (holding that a later homeowner's negligence claim failed because the contractor's duty arose from its contract with the prior owner, not from a common-law duty owed to the later purchaser); *Faber v. Ronald Chaffman Gen. Constr., Inc.*, 186 Ohio App. 3d 778, 780–83 (Ohio Ct. App 2010) (declining to expand *McMillan* to a non-builder-vendor contractor who had contracted with a prior owner); *Brewer v. H & R Concrete, Inc.*, 1999 WL 49366, at *1 (Ohio Ct. App. 1999) (affirming summary judgment for subcontractors where the homeowners were not parties to, or third-party beneficiaries of, the subcontractors' contracts); *Lin v. Gatehouse Constr. Co.*, 84 Ohio App. 3d 96, 101–02 (1992) (holding that privity is required in a negligence action by a subsequent owner against a subcontractor).

Federal decisions applying Ohio law follow suit.  *See Tailwind Grp., Inc. v. Fire Guard, LLC*, 2023 WL 5352511, at *4 (S.D. Ohio 2023) (explaining that when a party contracts for future construction services, the implied duty to perform in a workmanlike manner arises in contract, not tort); *Rogers v. Restore Contracting, Inc.*, 721 F. Supp. 3d 630, 638–39 (S.D. Ohio 2024) (rejecting negligence liability where the plaintiffs identified no source of a non-contractual duty to perform roofing work in a workmanlike manner); *Ohio Sec. Ins. Co. v. Brakefire, Inc.*, 2024 WL 2816024, at *9 (N.D. Ohio 2024) (rejecting negligence theory premised on failure to perform contracted work properly).

5

And Florists' duty cases do not change the analysis.  *See, e.g.*, *Simmers v. Bentley Constr. Co.*, 64 Ohio St. 3d 642, 645–46 (1992) (holding that an independent contractor that creates a dangerous condition on real property is not shielded by the open-and-obvious doctrine applicable to landowners); *Mussivand v. David*, 45 Ohio St. 3d 314, 319 (1989) (holding that "[a] person who has a venereal disease does not have the duty to disclose his condition to everyone" because duty depends on the relationship between the parties and public-policy considerations).

Simply put, Florists points to no case holding that a subsequent purchaser may sue a non-seller construction participant for negligent construction absent a relationship between the parties. Florists' allegation that Mountain High was "specialized," "expert," and "uniquely positioned" to identify the bad plates (Doc. 27 at 6–8) creates no duty to Mastronardi.  Similarly, the industry standards cited by Florists may define how a contractor should perform work, but they do not convert contractual project obligations owed to Thermo or Golden Fresh into tort duties owed to later purchasers.

**"Other Property"**

Florists next argues it is not really seeking reimbursement for repairs to the greenhouse, but only the damage to the contents -- similar to a building collapsing and damaging a neighbor's property (Docs. 25 at 20–21, 31–33; 27 at 6).  But pleading a more sympathetic category of damages does not create the missing link.

Florists points to *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.*, but that case doesn't change the result.  42 Ohio St. 3d 40 (1989).  That case held that a commercial buyer may not recover in tort for economic loss from damage to the defective product itself absent injury to persons or damage to other property.  *Id.* at 44–45.  It did *not* hold that every claimed injury to "other property" automatically supplies a tort duty against every construction participant.  Nor does it eliminate Ohio's separate rules requiring privity, a substitute for privity, or an independent tort

6

duty.  Further, the Ohio Supreme Court has held that a project owner cannot recover purely economic tort damages from a subcontractor based on a breach of created duties, and that a subcontractor's mere knowledge of the project owner's identity did not create a sufficient nexus to substitute for privity.  *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc*, 106 Ohio St. 3d 412, 414–16 (2005).  If mere knowledge of the owner is insufficient, then foreseeability that a greenhouse may later contain crops is not enough to create a tort duty to a later purchaser who had no relationship with the subcontractor.  *See Fed. Ins. Co. v. Fredericks*, 2015-Ohio-694, ¶¶ 1–3 (Ohio Ct. App. 2015) (barring subrogated insurer's claims for indirect economic losses after a building collapse based on the economic-loss rule and privity principles).

**Res Ipsa**

Florists next attempts to use Count 5 to assert a standalone res ipsa loquitur claim (Doc. 25 at 33–35).  But res ipsa loquitur is not an independent claim for relief.  It is an evidentiary doctrine that permits an inference of negligence in limited circumstances.  *Hake v. George Wiedemann Brewing Co.*, 23 Ohio St. 2d 65, 66–67 (1970).  It may help prove breach, but it does not create duty.

The doctrine also does not fit the pleaded facts.  Res ipsa requires Florists to show that the instrumentality causing the injury was under Mountain High's exclusive management and control at the relevant time and that the injury occurred under circumstances that ordinarily would not occur if ordinary care had been used.  *Jenkins v. Krieger*, 67 Ohio St. 2d 314, 318 (1981).  When the instrumentality was used, managed, or controlled by several actors, the inference does not fit.  *CSX Transp., Inc. v. Exxon/Mobil Oil Corp.*, 401 F. Supp. 2d 813, 819 (N.D. Ohio 2005).  The amended Complaint alleges multiple actors and multiple possible causes.  Those allegations do not describe an instrumentality or condition exclusively controlled by Mountain High.

**Misrepresentation & Warranty**

Counts 6 and 7 both depend on statements by Mountain High.  Start with Count 6, alleging Mountain High made public or project-related statements about its skill, precision, and ability to make project documents become reality in the field (Doc. 25 at 35–42).  Florists alleges Golden Fresh and Thermo relied on those representations in retaining Mountain High for the job, and Mastronardi was within the "limited class" of foreseeable subsequent owners for whose benefit and guidance Mountain High supplied the information (*id.* at 40–42).

Under Ohio law, negligent misrepresentation requires false information supplied for the guidance of others in business transactions, justifiable reliance, and pecuniary loss caused by that reliance.  *Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 4 (1989); *Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App. 3d 316, 328 (1999) (noting that negligent misrepresentation requires *justifiable* reliance on the information).  If the reliance is by a third party, they must be part of a "specifically foreseen" class for whose guidance the information was supplied.  *Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 156 (1982).

Florists does not plead reliance by Mastronardi; it pleads reliance by others.  It does not allege Mountain High supplied information or promises to Mastronardi before Mastronardi bought, occupied, or operated the greenhouse.  It does not allege Mastronardi saw Mountain High's statements or made any business decision in reliance on them.  And Florists' "limited class" allegation is conclusory.  Ohio law protects a specifically foreseen and limited class of recipients in a business transaction, but it does not permit a later purchaser to borrow someone else's reliance on generalized promotional statements.  If that were enough, public marketing statements by any construction firm could create unlimited negligent-misrepresentation liability to unknown later owners who never received or relied on the statements.  *See Sito v. Jackshaw Pontiac, Inc.*, 127 Ohio App. 3d 389, 394

8

(1998) (affirming dismissal where plaintiffs failed to allege justifiable reliance on the alleged misrepresentation).

Next, Count 7, breach of express warranty, fares no better. Ohio express-warranty law requires "an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase." *Wagner v. Roche Lab'ys*, 85 Ohio St. 3d 457, 459 (1999) (quoting *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 248 (1958)). Florists alleges Mountain High made statements about its skill, experience, quality, and professional care that became part of the basis for Mountain High's "retention, approval, acceptance, or use" on the project (Doc. 25 at 42–44). But, as outlined above, those allegations concern Thermo and Golden Fresh -- not Mastronardi. Nowhere does Florists allege Mountain High made such statements to Mastronardi, or that Mastronardi relied on, *or even knew about*, any Mountain High statements before purchasing and operating the greenhouse.

**Amendment & Futility**

Finally, Florists asks for leave to amend again, if the Court finds any claim deficient (Doc. 27 at 20). However, Florists already amended in an attempt to remedy the duty issue. The amended Complaint added 35 more pages. But none of those pages cures the original defect. The problem is not a missing detail about the weld plates or the project; it is the lack of any cognizable legal relationship between the parties. That is a defect that no further amendment can fix.

### CONCLUSION

Mountain High's Motion to Dismiss (Doc. 26) is granted. This third attempt by Florists to recover its payment collapses, much like the greenhouse did. This action is dismissed with prejudice.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE
July 31, 2026

9